| | |
|---|---|
| STATE OF MINNESOTA | DISTRICT COURT |
| COUNTY OF WRIGHT | TENTH JUDICIAL DISTRICT |

| | |
|---|---|
| Integrated Recycling Technologies Corporation, | CASE TYPE: 14, Other Civil<br>COURT FILE NO.: |
| Plaintiff, | **SUMMONS** |
| vs. | |
| CMET International, Inc., | |
| Defendant. | |

THIS SUMMONS IS DIRECTED TO THE ABOVE NAMED DEFENDANT:

1.    **YOU ARE BEING SUED.**  The Plaintiff has started a lawsuit against you.  The Plaintiff's Complaint against you is attached to this summons.  Do not throw these papers away. They are official papers that affect your rights.  You must respond to this lawsuit even though it may not yet be filed with the Court and there may be no court file number on this summons.

2.    **YOU MUST REPLY WITHIN 20 DAYS TO PROTECT YOUR RIGHTS.** You must give or mail to the person who signed this summons **a written response** called an Answer within 20 days of the date on which you received this Summons.  You must send a copy of your Answer to the person who signed this summons located at:

> GRAY, PLANT, MOOTY,
> MOOTY & BENNETT, P.A.
> c/o Andrew W. Steil
> 1010 West St. Germain, Suite 500
> St. Cloud, MN 56301

3.    **YOU MUST RESPOND TO EACH CLAIM.**  The Answer is your written response to the Plaintiff's Complaint.  In your Answer, you must state whether you agree or disagree with each paragraph of the Complaint.  If you believe the Plaintiff should not be given everything asked for in the Complaint, you must say so in your Answer.

4.   **YOU WILL LOSE YOUR CASE IF YOU DO NOT SEND A WRITTEN RESPONSE TO THE COMPLAINT TO THE PERSON WHO SIGNED THIS SUMMONS.** If you do not Answer within 20 days, you will lose this case. You will not get to tell your side of the story, and the Court may decide against you and award the Plaintiff everything asked for in the complaint. If you do not want to contest the claims stated in the complaint, you do not need to respond. A default judgment can then be entered against you for the relief requested in the complaint.

5.   **LEGAL ASSISTANCE.** You may wish to get legal help from a lawyer. If you do not have a lawyer, the Court Administrator may have information about places where you can get legal assistance. **Even if you cannot get legal help, you must still provide a written Answer to protect your rights or you may lose the case.**

6.   **ALTERNATIVE DISPUTE RESOLUTION.** The parties may agree to or be ordered to participate in an alternative dispute resolution process under Rule 114 of the Minnesota General Rules of Practice. You must still send your written response to the Complaint even if you expect to use alternative means of resolving this dispute.

Dated this 18th day of March, 2013

GRAY, PLANT, MOOTY,
MOOTY & BENNETT, P.A.

Andrew J. Steil (#387048)
1010 West St. Germain Street
Suite 500
St. Cloud, MN 56301
Andrew.Steil@gpmlaw.com
Direct: (320) 202-5354
Office: (320) 252-4414
Fax:    (320) 257-5741

**Attorneys for Plaintiff Integrated
Recycling Technologies Corporation**

GP:3375502 v1

-2-

STATE OF MINNESOTA

COUNTY OF WRIGHT

DISTRICT COURT

TENTH JUDICIAL DISTRICT

---

Integrated Recycling Technologies
Corporation,

        Plaintiff,

   vs.

CMET International, Inc.,

        Defendant.

CASE TYPE: 14, Other Civil
COURT FILE NO.:

**VERIFIED COMPLAINT**

---

Plaintiff Integrated Recycling Technologies Corporation, as and for its Complaint against Defendant CMET International, Inc. states and alleges as follows:

## PARTIES AND JURISDICTION

1.    Integrated Recycling Technologies Corporation ("Plaintiff") is a Minnesota corporation with its principal place of business in Monticello, Minnesota.

2.    CMET International, Inc. ("Defendant") is a New York corporation with its principal executive office located at 420 Jericho Turnpike, Suite 368, New York, New York and its registered agent is Richie Y. Lee.

3.    Defendant's purchase orders presented to Plaintiff state Defendant's operating location is 471 N. Broadway, Suite 368, Jericho, New York 11753.

4.    Defendant is not registered with the Minnesota Secretary of State.

5.    Defendant is not registered to do business in Minnesota and therefore does not have a registered agent within Minnesota.

6.    All purchases by Defendant from Plaintiff took place in Monticello, Minnesota.

7.    Defendant sent the majority of purchase order requests to Plaintiff's Monticello, Minnesota location.

8.     Plaintiff performed by fulfilling the majority of Defendant's purchase orders in Monticello, Minnesota.

9.     Defendant was obligated to make payment to Plaintiff's Monticello, Minnesota location.

10.     Wright County has jurisdiction on this matter pursuant to Minnesota Statutes § 542.09.

## FACTS

11.     Plaintiff is in the business of recycling scrap including catalytic converters, electronic scrap, non-ferrous scrap, and precious metals.

12.     Defendant is in the business of purchasing and exporting scrap and metals.

13.     Defendant sought out Plaintiff to purchase certain recycled materials.

14.     Defendant personally inspected Plaintiff's facility and identified the class of scrap materials it sought for its business needs.

15.     Defendant purchased certain recycled materials ("Goods").  Copies of the purchase orders are attached as **Exhibit A**.

16.     Defendant is a sophisticated company and previously purchased products similar to the Goods from third parties.

17.     Between April 2012, and October 2012, Defendant sent Plaintiff purchase orders for Goods.

18.     Defendant ordered the Goods to be delivered FAS Minneapolis to a railroad yard located in Minneapolis, Minnesota, except for purchase order 148-23 and 148-27, which were FOB Ramp Chicago.

19.     Defendant agreed to pay Plaintiff for the Goods upon delivery to the Minneapolis railroad yard or Chicago ramp.

-2-

20.    Plaintiff timely complied with the purchase orders and delivered the Goods to the Minneapolis railroad yard or Chicago ramp.

21.    On August 15, 2012, an owner of Defendant sent an email to Plaintiff vaguely stating that there might be a problem with a minimal amount of the Goods.

22.    Defendant's representatives did not specifically identify any problems with the Goods.

23.    Defendant's representatives did not provide Plaintiff an opportunity to inspect the Goods, cure the claimed issue, and thereafter failed to return the Goods.

24.    Plaintiff demanded payment from Defendant, yet by November 8, 2012, Defendant still had not paid $317,395.18 to Plaintiff for Goods delivered prior to and during October 2012.

25.    Because of the failure of Defendant to pay for Goods delivered, Plaintiff lost the opportunity to purchase additional scrap for processing and sale.

26.    On December 6, 2012, Defendant stated there was an issue of non-conformity with some Goods from July 2012, which Defendant valued at $10,319.00.

27.    Defendant again failed to specify the non-conformity of the Goods.

28.    Defendant refused to pay for the other Goods delivered to Minneapolis or Chicago.

29.    On December 18, 2012, Defendant stated another issue of non-conformity of Goods, which it valued at $51,767.67.

30.    In the December 18, 2012, communication Defendant failed to specify the non-conformity of the Goods.

31.    Defendant refused to identify the alleged non-conformities except in vague terms.

32.     Defendant failed to identify the non-conformity with enough certainty to allow Plaintiff an opportunity to cure it.

33.     At the time Defendant claimed the alleged non-conformity in a total amount of $61,986.67, it owed Plaintiff hundreds of thousands of dollars.

34.     Plaintiff incurred storage costs on Goods it delivered in the same manner as previously purchased by Defendant; FAS Minneapolis or FOB Chicago. The storage charges were incurred after Defendant refused to pay for Goods it previously received forcing Plaintiff to store the Goods with a third party waiting for Defendant to comply with the parties contract.

35.     Defendant accepted and never revoked acceptance of any Goods from Plaintiff.

36.     Defendant has not returned any Goods.

37.     Plaintiff ultimately visited Defendant's offices in New York to request payment of the outstanding debt owing by Defendant.

38.     During the conversation in New York, Defendant demanded that Plaintiff only receive a portion of the amounts owing and the remaining $80,000.00 would be paid upon further inspection of Goods.

39.     Defendant intentionally withheld payment to Plaintiff while ordering additional Goods knowing it would fabricate a dispute.

40.     During the New York conversation, Defendant threatened that if its demand was not accepted that it would not pay Plaintiff anything.

41.     Defendant breached the parties' agreement by withholding money.

42.     Despite its promise that it would pay the remaining $80,000.00, Defendant has yet to pay Plaintiff.

43.     In an email from Defendant on January 16, 2013, it confirmed the Goods arrived in China.

-4-

44.     Regardless of Defendant's demands, Plaintiff sold the goods FAS Minneapolis, except purchase orders 148-23 and 148-27, which were FOB Chicago and Defendant failed to pay for the Goods purchased.

## COUNT I
## BREACH OF CONTRACT

45.     Plaintiff restates and incorporates the preceding paragraphs as if fully stated herein.

46.     Plaintiff and Defendant entered into a contract whereby Goods were purchased FAS Minneapolis or FOB Chicago.

47.     Plaintiff delivered the Goods to Minneapolis or Chicago as contracted.

48.     Defendant failed to remit payment to Plaintiff upon receiving the Goods.

49.     Defendant accepted and thereafter did not revoke acceptance.

50.     Defendant has not paid Plaintiff in full and has breached the parties' contracts.

51.     Plaintiff seeks actual, incidental and consequential damages for Defendant's breach of contract in an amount in excess of $50,000.00

## COUNT II
## BREACH OF UCC

52.     Plaintiff restates and incorporates the preceding paragraphs as if fully stated herein.

53.     Under Minn. Stat. § 336.2-319(2) and 336-2-503, Plaintiff's only obligation with regard to the Goods sold to Defendant was to place them free alongside the rail carrier and provide all documents indicating it had met such condition.

54.     Plaintiff complied with its contractual obligations.

55.     Under Minn. Stat. § 336.2-319(4) and 336.2-507, Defendant's obligation was to make payment following tender of the compliance documents.

56.   Defendant failed to meet its obligation.

57.   Further, Defendant waived any objection to the Goods by failing to provide reasonable notice or particular information regarding nonconformance when requested by Plaintiff under Minn. Stat. § 336.2-605.

58.   Plaintiff seeks actual, incidental and consequential damages for Defendant's breach of contract in an amount in excess of $50,000.00.

## COUNT III
## CONVERSION

59.   Plaintiff restates and incorporates the preceding paragraphs as if fully stated herein.

60.   Defendant threatened to withhold all funds owing Plaintiff unless Plaintiff agreed to accept a discounted amount and leave the $80,000.00 in dispute for later inspection of Goods delivered to China.

61.   Defendant's conduct was contrary to the parties' contractual relationship.

62.   Defendant knew it purchased the Goods FAS Minneapolis or FOB Chicago.

63.   Defendant knew the Goods had been delivered the Minneapolis rail yard or Chicago ramp as agreed upon.

64.   Upon delivery of the Goods by Plaintiff, Defendant was obligated to tender payment to Plaintiff.

65.   The exchange of Plaintiff's Goods for Defendant's payment was agreed upon to be simultaneous, similar to other point of purchase transactions.

66.   Upon delivery of the Goods by Plaintiff, Defendant intentionally failed to pay Plaintiff but nonetheless took the Goods.

67.   Defendant took the Goods without paying for it.

68.   Defendant retained the Goods and failed to remit payment thereafter.

69.    Defendant vaguely created a story regarding the Goods quality in an effort to lower its obligations.

70.    Defendant's story ignores that it previously inspected the Goods and was required to remit payment upon delivery by Plaintiff of the Goods to the Minneapolis rail yard or Chicago ramp.

71.    Defendant retained the Goods despite not paying for them.

72.    Defendant's retention and control of the Goods is inconsistent with Plaintiff's rights.

73.    Defendant should not have taken possession or other taken control of the Goods by shipping the Goods to China without immediately paying Plaintiff as agreed upon.

74.    Taking the Goods without paying for them and failing to return the Goods is conversion.

75.    Plaintiff, due to Defendant's improper and intentional conduct, suffered damages in the loss of amounts due and owing it, lost opportunities, and other damages in an amount in excess of $50,000.00.

## COUNT IV
### ESTOPPEL

76.    Plaintiff restates and incorporates the preceding paragraphs as if fully stated herein.

77.    Defendant ordered the Goods from Plaintiff.

78.    Plaintiff delivered the Goods FAS Minneapolis or FOB Chicago as directed by Defendant.

79.    Defendant accepted the Goods and has not revoked acceptance.

80.    Defendant is in possession of the Goods.

81.    Defendant has not paid for $80,000.00 of Goods purchased and received.

82.    Defendant has benefited at the expense of Plaintiff by taking $80,000.00 worth of Goods and not paying.

83.    As a result of Defendant's acceptance of the Goods and failure to revoke or pay $80,000.00, Defendant should be estopped from benefitting at the expense of Plaintiff by accepting the Goods and failing to pay, and reimburse Plaintiff for the value of the Goods it purchased without paying in the amount of $80,000.00.

**WHEREFORE**, Plaintiff respectfully requests the following relief against Defendant:

1.    Actual damages in an amount in excess of $50,000.00;

2.    Its costs, disbursements herein, and interest at the statutory rate of 6 percent through the date of first demand by Plaintiff, November 8, 2012, and interest at 10 percent from November 9, 2012, through the date of judgment;

3.    Its consequential and incidental damages as a result of Defendant's failure to pay and pick up Goods; and

4.    Such other relief as the Court may find just and equitable.

Dated this 18th day of March, 2013

GRAY, PLANT, MOOTY,
MOOTY & BENNETT, P.A.

Andrew J. Steil (#387048)
1010 West St. Germain Street
Suite 500
St. Cloud, MN 56301
Andrew.Steil@gpmlaw.com
Direct:  (320) 202-5354
Office:  (320) 252-4414
Fax:     (320) 257-5741

**Attorneys for Plaintiff Integrated
Recycling Technologies Corporation**

-8-

## ACKNOWLEDGMENT

The undersigned hereby acknowledges that costs, disbursements, and reasonable attorney and witness fees may be awarded pursuant to Minn. Stat. § 549.211, subd. 2, for the party against whom the allegations in this pleading are asserted.

Andrew J. Steil

STATE OF MINNESOTA      )
                        ) ss
COUNTY OF WRIGHT        )

Being first duly sworn, Steve Budd states that he is the CEO of Plaintiff Integrated

Recycling Technologies Corporation and has read the foregoing Verified Complaint, and knows

the contents thereof and that the facts stated therein are true of his own knowledge unless

specifically stated otherwise. The undersigned hereby acknowledges that costs, disbursements,

and reasonable attorney and witness fees may be awarded pursuant to Minn. Stat. § 549.211,

subd. 2. for the party against whom the allegations in this pleading are asserted.

_____
Steve Budd

Subscribed and sworn to before
me this 19 day of March, 2013.

_____
Notary Public

JENNIFER MARIE JENSON
NOTARY PUBLIC - MINNESOTA
MY COMMISSION EXPIRES 01/31/16

-10-